**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOSE M. U., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. 20-cv-00469-SH |
| | ) |
| KILOLO KIJAKAZI,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jose M. U. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. (ECF Nos. 6 and 7.) For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title II disability benefits on August 9, 2018, with a protective filing date of July 26, 2018. (R. 21, 195-96.) In his application, Plaintiff alleged he has been unable to work since November 15, 2013, due to conditions including "post-injury condition-back surgery," limited mobility, "disc/replacement hip," a non-specific musculoskeletal condition, and "pre diabetes." (R. 195, 218.) Plaintiff was 50 years old at the time of the ALJ's decision. (R. 34, 195.) Plaintiff has less than a high school education and past relevant work as a Supervisor III. (R. 48-49, 70-71, 219.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 99-102, 108-13.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which the ALJ conducted on October 31, 2019. (R. 43-74, 114-15.) The ALJ issued a decision on November 27, 2019, denying benefits and finding Plaintiff not disabled. (R. 21-34.) The Appeals Council denied review on July 24, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on September 22, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2018. (R. 24.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of November 15, 2013, through the date last insured. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) periodic radiculopathy of the right lower extremity; and (3) chronic pain syndrome. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 24-25.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a)," with the following additional limitations: "no climbing of ladders, ropes or scaffolds and stooping, crouching, crawling, kneeling, balancing and climbing of ramps or stairs could be done on an occasional basis." (R. 25.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 25-32.)

At step four, the ALJ found Plaintiff unable to perform his past relevant work as a Supervisor III through the date last insured. (R. 32.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Table Worker, Toy Stuffer, and Touch Up Screener. (R. 33.) Accordingly, the ALJ concluded Plaintiff was not disabled from November 15, 2013, through December 31, 2018. (R. 34.)

### IV. Issues

Plaintiff raises a single allegation of error in his challenge to the denial of benefits: the ALJ failed to recognize and evaluate Plaintiff's borderline age situation under 20

4

C.F.R. § 404.1563(b). (ECF No. 19 at 10-15.) That is, Plaintiff notes he turned 50—resulting in a change in age categories—less than six months after his date last insured. (*Id.* at 1.) Plaintiff argues the ALJ failed to recognize Plaintiff's borderline age and that, had the ALJ properly considered it, he would have found Plaintiff disabled under a non-mechanical application of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("the grids"). (*Id.* at 10, 12, 14.) The Commissioner acknowledges that the ALJ should have found a borderline age situation existed (ECF No. 20 at 5) but argues any error was harmless (*id.* at 8-11).

The undersigned finds that the ALJ did not properly evaluate Plaintiff's borderline age situation and that this error was not harmless. The Court, therefore, reverses and remands for proceedings consistent with its Opinion and Order.

## V. Analysis

### A. The ALJ Erred in Failing to Consider Plaintiff's Age at Step Five.

#### 1. Background – The Borderline Age Situation

At step five of the sequential evaluation, the Commissioner has "the burden of showing [the claimant] could perform other work that exists in the national economy." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998); *see also* 20 C.F.R. § 404.1560(c)(2). The ALJ does this by looking at claimant's age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). To assist in this evaluation, the Commissioner has established three age categories: younger person (an individual under the age of 50), person closely approaching advanced age (an individual between the ages of 50 and 54), and person of advanced age (an individual age 55 or older). *Id.* § 404.1563(c)-(e). For a person in the

first category (18-49),[2] the Commissioner generally does not consider age to "seriously affect [the] ability to adjust to other work." *Id.* § 404.1563(c). However, for a person in the second category (50-54), the Commissioner will consider that person's age, severe impairment(s), and limited work experience and whether that "may seriously affect [their] ability to adjust to other work." *Id.* § 404.1563(d) (emphasis added); *see also id.* § 404.1563(a) (noting that advancing age is an increasingly limiting factor in a person's ability to make an adjustment to other work).

When considering age in this context, the last operative date is the one on which the claimant was last insured. *See* Social Security Ruling ("SSR"), 83-10, 1983 WL 31251, at *8 (Jan. 1, 1983); *Daniels*, 154 F.3d at 1132 n.4 (noting the last date of the claimant's insured status "is the appropriate date for determining applicability of the grids"). As such, the Court looks to Plaintiff's age on December 31, 2018 (R. 24), when Plaintiff was 49 years old (R. 195). Applied mechanically, Plaintiff's age category was, therefore, that of a younger person and would not seriously affect his ability to adjust to other work. 20 C.F.R. § 404.1563(c).

The age categories, however, are not to be applied mechanically in a borderline situation. *Id.* § 404.1563(b). Instead, if (1) the claimant is within "a few days to a few months" of reaching an older age category and (2) using that older category would result in a decision that the claimant is disabled, then the ALJ "will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." *Id.* The agency does not provide "fixed guidelines as to when a borderline situation exists,"

---

[2] In certain circumstances, not applicable here, the Commissioner will consider that persons aged 45-49 are more limited in their ability to adjust to other work than those in the 18-44 category. 20 C.F.R. § 404.1563(c).

6

because "such guidelines would themselves reflect a mechanical approach." SSR 83-10, at *8. However, six months has generally been the cutoff. *See Cox v. Apfel*, 166 F.3d 346, 1998 WL 864118, at *4 (10th Cir. 1998) (unpublished)[3] ("[B]ecause plaintiff was within six months of the next age category . . . at the time the ALJ issued his decision,[4] he erred by not addressing whether plaintiff was of borderline age before choosing a rule from the grids."); *see also* Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-2-2-42, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-2-42.html (last visited Feb. 15, 2022) (the Social Security Administration ("SSA") considers "within a few days to a few months" to mean "a period not to exceed six months");[5] Program Operations Manual System

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[4] In *Cox*, the plaintiff was still insured at the time of the ALJ's decision. *Id.*

[5] HALLEX is a manual that provides "guiding principles, procedural guidance, and information to hearing level and Appeals Council staff." HALLEX I-1-0-1, https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html (last visited Feb. 15, 2022). As it is not a regulation, it does not have legal force. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam) (citing the SSA claims manual). There is a split in the Circuits as to whether courts should require the SSA to follow the internal procedures it sets forth in HALLEX, at least in instances where prejudice to a claimant results. *Compare, e.g.*, *Shave v. Apfel*, 238 F.3d 592, 596-97 (5th Cir. 2001) (expressing a strong preference for requiring the SSA to follow HALLEX where a claimant is prejudiced) *with Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (HALLEX provisions may provide interpretation of regulations but are not independently binding). The Tenth Circuit appears not to have decided which approach is more appropriate. *Butterick v. Astrue*, 430 F. App'x 665, 668 n.3 (10th Cir. 2011) (unpublished); *Lee v. Colvin*, 631 F. App'x 538, 543 & n.3 (10th Cir. 2015) (unpublished). In this case, both Plaintiff and the Commissioner rely on HALLEX for their arguments, and its provisions are instructive and relevant. And—at least as it relates to the agency's interpretation of its own regulations—the HALLEX is likely given "controlling weight" unless it is arbitrary, capricious, or contrary to law. *See McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999) (referring to a different manual).

("POMS") DI 25015.006(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006 (last visited Feb. 15, 2022) (same).[6]

### 2. Plaintiff Was in a Borderline Age Situation

On his date last insured, Plaintiff was five months and 17 days from turning 50 years old. (*Compare* R. 24 (last insured date) *with* R. 195 (date of birth).)

Using the next age category ("person closely approaching advanced age") could have resulted in a finding that Plaintiff was disabled under the grids. That is, Plaintiff had less than a high school education (R. 219), his previous work experience was skilled (R. 71),[7] the ALJ found him limited to sedentary work (R. 25), and the VE testified that his skills were not transferrable to sedentary work (R. 72-73). Under the grids, if Plaintiff was "closely approaching advanced age" and the ALJ credited the VE's testimony that his skills were not transferrable, Plaintiff would be found disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.10.[8]

The Court, therefore, finds that the ALJ should have found that a borderline age situation existed under 20 C.F.R. § 404.1563(b).

---

[6] POMS also lacks legal force, *Schweiker*, 450 U.S. at 789, but the Tenth Circuit has given controlling weight to its interpretations of regulations where not arbitrary, capricious, or contrary to controlling law, *Neikirk v. Massanari*, 13 F. App'x 847, 849 (10th Cir. 2001) (unpublished).

[7] Supervisor III has an SVP level of five. *See* Dictionary of Occupational Titles ("DOT") § 575.130-014, 1991 WL 684017 (4th ed. 1991). This constitutes skilled work. *See* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("skilled work corresponds to an SVP of 5-9 in the DOT").

[8] Plaintiff posits that § 201.14 applies, but this category is for a claimant who is at least a high school graduate and whose recently completed education does not provide for direct entry into sedentary work. *Id.* §§ 201.00(g), 201.14. The ALJ found Plaintiff to have a limited education (R. 32), making § 201.10 more applicable.

### 3. The ALJ Was Required to Consider Plaintiff's Borderline Age Situation and Failed to Do So

In light of Plaintiff's borderline age situation, the ALJ was required to "consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case," *id.*, and should have explained his decision to use either Plaintiff's chronological age or the older age category, POMS DI 25015.006(G) (noting this explanation should include "case-specific supporting factors"); HALLEX, I-2-2-42(C)(5) ("The ALJ will explain in the decision that he . . . considered the borderline age situation, state whether he . . . applied the higher age category or the chronological age, and note the specific factor(s) he . . . considered.").

In his decision, the ALJ mentioned Plaintiff's age only twice. (R. 26, 32.) First, the ALJ incorrectly noted that Plaintiff would turn 50 "six months after expiration of the date last insured," and "[t]he only way for claimant to prevail is to show less than sedentary exertion prior to" that date. (R. 26.) Second, at step five, the ALJ simply noted that Plaintiff was born on June 17, 1969, and thus fell into the category of a younger individual under 20 C.F.R. § 404.1563(c). (R. 32.) From these statements, it appears the ALJ did not recognize that a borderline age situation applied.[9]

It is not surprising, then, that the ALJ failed to consider Plaintiff's borderline age situation as required by 20 C.F.R. § 404.1563(b) and failed to explain his findings as the SSA's manuals suggest. As a result, he mechanically applied the age categories in finding

---

[9] The Court, therefore, rejects the Commissioner's supposition that the ALJ was "keenly aware of Plaintiff's age," resulting in an inference that the ALJ "was aware that a borderline age situation might exist." (ECF No. 20 at 10-11.) Instead, at most, it appears the ALJ believed Plaintiff had hit the six-month cutoff, which he interpreted as placing a grids finding out of reach. Even if the ALJ recognized Plaintiff was of borderline age, he still erroneously failed to consider whether an older age category would result in a disabled finding.

that Plaintiff would not be disabled under the grids. (R. 33.) This was an error. *Daniels*, 154 F.3d at 1136 ("When a claimant falls within a borderline, § 404.1563(a) prohibits the Commissioner from mechanically applying the age categories in relying on the grids to determine whether a claimant is disabled." (emphasis added)). In these circumstances, remand is appropriate. *Byers v. Astrue*, 506 F. App'x 788, 791 (10th Cir. 2012) (unpublished) ("a remand is in order because we cannot tell whether the ALJ would have reached the same result by considering that [the claimant] was five-and-a-half months short of" the next age category).

The Commissioner, however, argues that even if the ALJ erred, this Court should not remand, because "Plaintiff has not shown that the additional factors could warrant" applying the higher age category. (ECF No. 20 at 5.) For the reasons explained below, this Court disagrees.

### B.   The ALJ's Error was Not Harmless.

The Commissioner assert Plaintiff's appeal fails, because Plaintiff has not shown how other factors had a significantly adverse impact to his ability to adjust to other work. (*Id.* at 9-10 (citing HALLEX I-2-2-42(C)(3) and POMS DI 25015.006(E)(2)).) To the extent the Commissioner argues internal agency documents place a burden on Plaintiff at step five, such an argument would be contrary to controlling law.[10]

---

[10] The Commissioner also cites *Shinseki v. Sanders*, which states that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." 556 U.S. 396, 409 (2009). This does not, however, shift the underlying substantive burden. Rather, it simply stands for the proposition that, in ordinary appeals, "the party seeking reversal normally must explain why the erroneous ruling caused harm." *Id.* at 410. To the extent this rule applies here, Plaintiff has easily met it, arguing that the failure to recognize his borderline age resulted in the ALJ failing to find him disabled under the grids. In any event, the Court applies below the harmless-error test articulated by the Tenth Circuit for social security appeals.

10

In *Daniels*, the Commissioner similarly argued that the claimant "had the burden of showing he should be classified in the higher age bracket[] and that he failed to meet this burden." *Daniels*, 154 F.3d at 1133. The Court found this position "inapplicable" to the borderline age situation because "it ignores § 404.1563(a)" and "essentially places the burden on a claimant to prove why the grids should not be applied mechanically." *Id.* at 1134 ("Nothing in § 404.1563(a) supports this position."). "Moreover, placing the burden on the Commissioner of determining in the first instance what age category to apply is consistent with the Commissioner's existing burdens" at step five. *Id.*; *see also* 20 C.F.R. § 404.1560(c)(2); *Robinson v. Berryhill*, No. 18-CV-03027-CMA, 2020 WL 1234880, at *6 (D. Colo. Mar. 13, 2020) (noting that the Tenth Circuit has recognized "clearly that the Commissioner has the burden"). Yet the Commissioner has continued to make this argument despite intervening changes to HALLEX and POMS and the continuing rejection of the argument in the courts of this circuit. *See, e.g.*, *Robinson*, 2020 WL 1234880, at *6; *Wood v. Saul*, No. CIV-18-1160-C, 2019 WL 6570192, at *4-5 (W.D. Okla. Nov. 12, 2019) (rejecting argument, relying on HALLEX I-2-2-42, that the plaintiff has the burden to "establish vocational adversities justifying application of the higher age category" and noting "the Tenth Circuit has squarely rejected" the argument), *R. & R. adopted*, 2019 WL 6529123 (W.D. Okla. Dec. 4, 2019).

In any event, the ALJ's error here was not harmless. The Court must always be cautious in applying harmless error in the administrative review setting. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). However,

> it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

11

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). However, "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . . ." *Id.* The undersigned "may not create or adopt post[]hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Such a "post hoc effort to salvage the ALJ's decision would require [the Court] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen*, 357 F.3d at 1142.

Much of the Commissioner's brief is spent arguing that even had the ALJ considered the borderline age situation, application of the factors to this case would not warrant using the higher age category. (ECF No. 20 at 8-11.) It is not, however, apparent to this Court that the Commissioner is correct, nor is it the Court's role to come to this decision for the first time on appeal. Rather, under the policies the Commissioner cites, it is unclear how the ALJ would rule had he properly considered Plaintiff's borderline age in this very fact-specific area. *See* HALLEX, I-2-2-42; POMS DI 25015.006(E).

For example, in determining whether the higher age category is justified, HALLEX instructs the ALJ to consider "the overall impact of all the factors on the claimant's ability to adjust to doing other work . . . e.g. residual functional capacity combined with age, education, and work experience . . . ." HALLEX, I-2-2-42(C). The POMS gives additional guidance on how this evaluation is to be completed. Regarding education, it notes: "education below the high school level may be vocationally disadvantageous." POMS DI 25015.006(E)(1)(b). Moreover, when a claimant's education is limited or less (but he is literate), the adverse effect of the claimant's education is weighed on a scale that considers

12

his specific education level—evaluated between "no formal education" (being the most adverse) to completion of the 11th grade (being not adverse). *Id.* In this case, Plaintiff completed the 10th grade, which is on the higher end of the scale but fails to reach the level of "not adverse." (R. 219.)

Additionally, when considering a claimant's prior work experience, the Administration's internal procedures note that if that experience is within the 15-year period but ended "many years ago," that factor is "more vocationally adverse" than if the prior work ended in the recent past. POMS DI 25015.006(E)(1)(c). Here, Plaintiff last worked in 2013 (R. 53), six years before the ALJ's decision (R. 34).

In this case, the ALJ did not consider these or any of the other listed factors in the context of borderline age. There may have been other factors that the ALJ would consider particularly relevant. Regardless, the Court cannot confidently state "that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" than the ALJ did here. *See Allen*, 357 F.3d at 1145. As such, the ALJ's error was not harmless.

## VI.  Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should properly evaluate Plaintiff's borderline age situation.

**SO ORDERED** this 16th day of February, 2022.

_____
**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**